UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MARIA K.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:22-cv-0094-MPB-MJD |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Claimant Maria K. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). See 42 U.S.C. § 423(d). Judge Matthew P. Brookman has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 12.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the District Judge **REVERSE** and **REMAND** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in June, 2021, alleging an onset of disability as of January 29, 2021. [Dkt. 5-5 at 2.] Claimant's application was denied initially and upon reconsideration, and

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

a hearing was held before Administrative Law Judge Kevin Martin ("ALJ") on March 8, 2022. [Dkt. 5-2 at 46.] On March 21, 2022, ALJ Martin issued his determination that Claimant was not disabled. *Id.* at 28. The Appeals Council then denied Claimant's request for review on May 3, 2022. *Id.* at 2. Claimant timely filed her Complaint on July 6, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of January 29, 2021. [Dkt. 5-2 at 30.] At step two, the ALJ found that Claimant had the following severe impairments: degenerative disc disease, borderline intellectual functioning, anxiety, and bipolar disorder. *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 31. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR404.1567(b) except she can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolding; and occasionally balance, stoop, kneel, crouch, and crawl. She is able to understand, remember, and carry out instructions for simple, repetitive tasks in a work setting requiring no more than occasional interactions with coworkers, supervisors and the general public and is able to tolerate simple changes in the routine work setting.

3

*Id.* at 34.

At step four, the ALJ found that Claimant was able to perform her past relevant work as a housekeeper during the relevant time period. *Id*. at 39. Alternatively, at step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as a packer, an assembler, and a sorter. *Id*. at 40. Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 41.

## IV. Discussion

Claimant raises numerous issues in her brief. Each of the issues will be addressed, as appropriate, below.

### A. The ALJ's Consideration of Claimant's Subjective Symptoms

Claimant argues that the ALJ's consideration of her subjective symptoms is "critically flawed" and requires remand. [Dkt. 7 at 13.] The Court agrees that remand is required.

In his decision, the ALJ recognized his obligation to evaluate Claimant's subjective symptoms pursuant to 20 C.F.R. § 404.1520c and SSR 16-3p. *Id.* at 34. SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit her ability to perform work-related activities. *Id.* at *3-4. At this step, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors;

the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3). When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements.  To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p, 2017 WL 5180304, at *8.  The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Id. at *9.

In this case, the ALJ concluded that

claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Dkt. 5-2 at 35.]

The first reason given by the ALJ is that Claimant "testified that she has not been able to sustain a job.  However, the claimant's earnings record indicate that she has worked at a couple of jobs for several years at a time." Id. at 37.  Presumably, the ALJ is referring to the following exchange with Claimant during the hearing:

Q: What all problems have you been having that you think affect your ability to work?

A: I've been having problems trying to comprehend and I just can't follow directions.  My boss would tell me to do things and I would forget.  And then, every time I would forget, I would end up in the office.

5

> Q: How long have you been having those problems with following directions, forgetting, that sort of thing?
>
> A: About every job I worked at pretty much. I had 29 jobs my whole life and I couldn't keep good with any of them.
>
> Q: Has that problem with the following directions and forgetting, has that gotten better, gotten worse, stayed the same?
>
> A: It's gotten worse. I'm even having problems at home.

*Id.* at 55. Claimant did not actually testify that she "has not been able to sustain a job"; she testified that she "couldn't keep good with any of" her jobs, and that her ability to do so had worsened over the years. Claimant's testimony as a whole indicates that she perceived that she was not able to do a good job, and that she ended up "in the office" being reprimanded in all of her jobs, and that eventually her symptoms worsened to the point where she could not sustain employment. *See id.* at 57-58 (Claimant was sent home once or twice a week from her last job because "[e]verything seemed to bother me at work and my head was racing. . . . I was around a lot of people and that's why I could never get nothing done right.") This is hardly a reason to discount her credibility.

The next reason the ALJ gives for discrediting Claimant's testimony regarding her subjective symptoms is the following:

> She testified that her mental health symptoms were getting worse over the last year. Treatment notes show that the claimant had improvement in her symptoms with medication shortly after establishing mental health treatment (Exhibit 5F). As such, her psychiatrist did not need to see her for two months. At her next visit in October 2021, she reported that she was increasingly irritated and [in] a bad mood as well as paranoid and suspicious of others despite being compliant with her medications (Exhibit 10F). She was started on a new medication at that time, and at her next appointment her medication was increased again (Exhibit 10F-5). She reported in December 2021 that her medications were helpful and she wanted to keep the dosages the same but brought up symptoms and features of ADHD (Exhibit 10F-3). However, she was reluctant to pursue medication for ADHD. At that time, she had normal mental status examination findings. Thus, the

6

> psychiatric treatment records do not show more than moderate limitations in functioning, and show that the claimant has had improvement with medication.
>
> ***
>
> The claimant was tearful during the hearing, and she reported she could not perform work tasks due to memory issues and focus problems. However, she resisted ADHD medication and reported doing better with other medication changes. Her psychiatric treatment notes do not show findings that would support her subjective reports and she did not participate in counseling or therapy, despite reporting debilitating symptoms. The record indicates that she reported to her primary medical care provider that she had to quit her job, seemingly due to mental symptoms (Exhibit 2F-6). However, improvement is indicated and the findings in the psychiatric notes do not support her subjective allegations of debilitating symptoms.

*Id.* at 37-38. The ALJ's summary portrays a patient who is trying different combinations and dosages of medications over the course of several months in order to manage her psychological symptoms. The records do not demonstrate that she had reached the point that she had found a reliably helpful medication regimen. In addition, the ALJ did not inquire of Claimant why she did not seek counseling or therapy and why she resisted adding ADHD medication to her treatment regimen. *See* SSR 16-3P (S.S.A. Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."); *see also Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) ("ALJs assessing mental illness and bipolar disorder must consider possible alternative explanations before racing to conclusions about noncompliance with medical directives.") (citation omitted); *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) (recognizing that "mental illness in general and bipolar disorder in particular . . . may prevent the

sufferer from taking her prescribed medicines or otherwise submitting to treatment").

In addition, as Claimant notes, the Seventh Circuit has pointed out that "[t]he very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." See *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (citations omitted). As for the ALJ's observation that "[a]t that time, she had normal mental status examination findings," the mental status examination portion of the medical record contained identical normal findings at each of her appointments with her psychiatrist, even when the narrative portion of those records suggests otherwise. See [Dkt. 5-7 at 129 (June 2021 appointment), 127 (July 2020 appointment), 156 (August 2020 appointment), 182 (October 2021 appointment), 180 (November 2021 appointment), 178 (December 2021)]. For example, the record from her first appointment with her psychiatrist notes that Claimant "denies depression, anxiety, memory loss, mental disturbance, suicidal ideation, hallucinations, paranoia" in the "review of systems" section of the record. [Dkt. 5-7 at 129.] However, in the narrative section, it states that Claimant "struggles with anxiety, anger and mood swings" and that she is "frustrated and sad." *Id.* Similarly, at her November 2021 appointment, Claimant was noted to be "very emotional and overcharged," but in the "mental status exam" portion of the record it states "no depression, anxiety, or agitation." *Id.* at 18. It is unreasonable to rely on the generic, "check box" portions of the medical record over the narrative portions.

Next, the ALJ stated that

> The undersigned notes that the claimant was crying during the hearing and her reports as well as reports from third parties indicate that the claimant frequently had crying spells. However psychiatric treatment notes rarely show that the claimant was crying at her appointments. She was noted to be very emotional and overcharged in November 2021, which is considered in the residual functional

>   capacity limitation to occasional interaction with others and simple changes in a routine work setting (Exhibit 10F-5).

*Id.* at 38. It is unclear what the ALJ meant by this statement. Elsewhere in the decision, as noted above, the ALJ found that "claimant's subjective reports of difficulty controlling her emotions, and her crying during the hearing support finding that the claimant had moderate limitations in adapting and managing oneself," and that "the psychiatric treatment notes indicated that the claimant had some difficulty with forgetting things, irritability and mood swings, and crying spells, which could reasonably cause moderate limitations and limit her to simple instructions in simple work settings with no more than occasional contact with others." *Id.* at 39. Thus, it does not appear that the ALJ actually disbelieved Claimant's claim of crying spells entirely, despite what the quoted statement might suggest, but, again, it is not clear.[2]

Finally, with regard to the symptoms caused by Claimant's degenerative disc disease, the ALJ stated:

>   The claimant testified that she has had back pain for several years and her pain required her to lie down during the day. However, she did not report any physical limitations on her function report (Exhibit 5E). Her husband did not report any physical limitations either (Exhibit 4E). Remote treatment notes mention back pain with very conservative treatment (Exhibit 4F). She did not complain of back pain again until October 2021 (Exhibit 12F-15). Again, there is very little treatment. Treatment notes indicate that the claimant went to the Emergency Department in October 2021 due to back pain and imaging indicated a disc protrusion with subarticular and foraminal compression of the left lateral recess and left sided exiting nerve root at L4-L5 (Exhibit 11F-39). However, when she followed up with her primary medical care provider on October 19, 2021, she denied back pain and indicated that her back pain is significantly improved but

---

[2] If, in fact, the ALJ meant that he did not believe Claimant, her husband, and her daughter when they stated that she had frequent crying spells—and perhaps believed that Claimant's crying during the hearing was not genuine—simply because Claimant did not always cry during her appointments with her psychiatrist, that is absurd. The fact that Claimant did not cry in the supportive environment of a psychiatrist's office says nothing about whether she had crying spells at other, more stressful times.

9

      she was concerned with intermittent mild to moderate low back pain (Exhibit 12F-17).  She did not report active back pain other than her October 2021 emergency room visit.  Thus, the record does not support substantial periods of lying down due to back pain, as the claimant has alleged.

*Id.*  Actually, although Claimant's treating physician noted on October 19, 2021, following her emergency room visit, that Claimant "denied significant back pain" on that day, he also noted that she was "concerned with intermittent mild to moderate low back pain."  [Dkt. 5-7 at 244.]  On examination, the doctor noted the following:  "limited ROM (Mild limitation on back extension with pain on trying to do full extension of the back) and tenderness (Paralumbar tenderness)."  *Id.*  In addition, Claimant complained of back pain on February 2, 2022, and her treating physician noted paralumbar tenderness on exam.  [Dkt. 5-7 at 234.]  Therefore, the ALJ's statement that "[s]he did not report active back pain other than her October 2021 emergency room visit" is inaccurate.

      The Court's review of an ALJ's credibility determination is generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong."  *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).  The ALJ's determination may be patently wrong where he fails to "'build an accurate and logical bridge between the evidence and the result.'"  *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)).  The ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons 'supported by the

record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)).

The ALJ failed to do so in this case because, as explained in detail above, he relied on inaccurate characterizations of the record as support for his conclusion that Claimant's subjective symptom allegations were not fully credible. In addition, it is unclear what the ALJ meant by his reference to Claimant's lack of crying at her psychiatric visits. Accordingly, remand is required for the ALJ to reevaluate his subjective symptom evaluation based on an accurate reading of the record and to more clearly articulate the reasons for his conclusions.

### B. The ALJ's Consideration of the Medical Opinions of Record

The record contains several medical opinions regarding Claimant's abilities. Because Claimant advanced this claim after March 27, 2017, the applicable law no longer required the ALJ to give special weight to the opinion of Claimant's treating physician. *See* 20 C.F.R. § 404.1520c(a). Rather, the ALJ was required to evaluate all medical opinions on an equal basis for "persuasiveness." *Id.* ALJs are instructed to evaluate all medical opinions using factors including whether the opinion is supported by objective medical evidence; the opinion's consistency with other evidence; the professional's relationship with the patient, including the length, frequency, purpose, and extent of treatment; and the professional's specialization. 20 C.F.R. § 404.1520c(c). In addition, the regulation expressly recognizes that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 404.1520c(c)(3)(v). After considering the relevant factors, an ALJ must articulate how persuasive he finds each medical opinion in his decision. 20 C.F.R. § 404.1520c(b). The most important factors ALJs will use in determining the persuasiveness of a medical opinion are supportability and consistency. 20

C.F.R. § 404.1520c(b)(2). Opinions that are supported by and consistent with objective medical evidence will be most persuasive. 20 C.F.R. § 404.1520c(c)(1)-(2).

With regard to Claimant's physical impairments, the record contains the opinion of state agency physician Shayne Small, M.D., who opined that Claimant could perform medium work with a few additional limitations. [Dkt. 5-3 at 14.] Dr. Small considered a lumbar x-ray taken in July 2016, but he did not have available to him the results of an MRI and CT scan that were performed on October 11, 2021. *See* [Dkt. 5-7 at 220] (MRI report); *id.* at 222 (CT scan report).

The ALJ summarized the reports from the MRI and CT scan as follows:

> A CT of the claimant's lumbar spine, dated October 11, 2021, revealed eccentric left disc protrusion with subarticular and foraminal compression of the left lateral recess and left-sided exiting nerve root, with severe left neural foraminal narrowing and compression of the exiting nerve root. An MRI of the lumbar spine dated October 11, 2021, showed L5–S1 left subarticular disc protrusion, severe in the lateral recess and neural foraminal narrowing with likely compression of the exiting nerve root within the subforamen.

[Dkt. 5-2 at 36] (internal citations omitted).[3] The ALJ then concluded that the state agency physician's opinion that Claimant could perform medium work was not persuasive and, based on this new evidence, instead limited Claimant to a range of light work. *Id.* at 39. As Claimant points out, this violated the prohibition against "playing doctor," a "clear no-no" under Seventh Circuit precedent. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJ's failure to submit new MRI to medical scrutiny was fatal "since it was new and potentially decisive medical evidence") (citations omitted). The ALJ simply was not qualified to determine that the condition of Claimant's spine, as shown on the new imaging, supported a finding that she was capable of a

---

[3] The 2016 x-ray found "mild levoscoloisis of the lumbar spine" and "advanced facet arthopathy at the L4-5 and L5-S1 levels." [Dkt. 5-7 at 24.]

range of light work; perhaps it supported a finding of sedentary work, or no work at all. As in *Goins*, the ALJ was required to obtain a medical opinion with regard to the import of the new imaging reports, rather than making that determination based on his own lay opinion. This must be corrected on remand.

The Commissioner argues that this case is distinguishable from *Goins* and "more analogous to cases where the Seventh Circuit found no error in the ALJ's analysis of the medical and opinion evidence." [Dkt. 9 at 18] (citing *Keys v. Berryhill,* 679 F. App'x 477, 480-81 (7th Cir. 2017), and *Olsen v. Colvin*, 551 F. App'x 868, 874-75 (7th Cir. 2014)). While the Court agrees that the unpublished, and therefore non-precedential, cases cited by the Commissioner lend some support to her argument, the Seventh Circuit's holding in *Goins* was unequivocally reiterated in *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018), in which the court stated:

> The ALJ stated that the MRI results were "consistent" with Akin's impairments and then based his assessment of her residual functional capacity "after considering . . . the recent MRIs." But, without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were "consistent" with his assessment. *See* [*Goins,* 764 F.3d at 680]; *Moon v. Colvin,* 763 F.3d 718, 722 (7th Cir. 2014). The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion. The ALJ had many options to avoid this error; for example, he could have sought an updated medical opinion. *See Green v. Apfel,* 204 F.3d 780, 782 (7th Cir. 2000). But because the ALJ impermissibly interpreted the MRI results himself, we vacate the judgment and remand this case to the agency.

*See also McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments."). The Court cannot ignore these clear statements in published Seventh Circuit cases in favor of less recent, unpublished decisions.

13

With regard to Claimant's mental impairments, the record contains medical opinions from two state agency psychologists, each of whom reviewed Claimant's medical records but did not examine her. The ALJ found the following with regard to those opinions:

> State agency psychological consultants reviewed the record on August 12, 2021, and on October 5, 2021, and opined that the claimant had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or read to do oneself (Exhibit 1A, 3A). The state agency psychological consultants further opined that the claimant was able to understand, carryout, and remember simple instructions; she could make judgments commensurate with functions of simple, repetitive tasks; she could respond appropriately to brief supervision and interactions with coworkers in work situations; and she could deal with changes in a routine work setting.
>
> The undersigned finds that this opinion is persuasive[,] although the claimant's subjective reports of difficulty controlling her emotions, and her crying during the hearing support finding that the claimant had moderate limitations in adapting and managing oneself. The weight of the evidence indicates that the claimant had some improvement with treatment they are primarily normal mental status examination findings although the psychiatric treatment notes indicated that the claimant had some difficulty with forgetting things, irritability and mood swings, and crying spells, which could reasonably cause moderate limitations and limit her to simple instructions in simple work settings with no more than occasional contact with others.

[Dkt. 5-2 at 38-39.] It appears that the most recent medical record reviewed by the state agency psychologists was dated August 6, 2021. *See* [Dkt. 5-3 at 3, 12].[4] As discussed above, later notes from her treating psychiatrist suggest that the improvement in her psychological symptoms noted at the August 6, 2021, visit was short-lived. At her next appointment, on October 1, 2021, she reported worsening symptoms, prompting her psychiatrist to add an additional drug to her

---

[4] The reports list records received from Evansville Psychiatric Associates dated September 3, 2021. The last appointment Claimant had there prior to that date was on August 6, 2021. One of the reports also lists records from Deaconess Hospital received on September 15, 2021; that is simply a note from that provider indicating that it had no updated records to provide.

treatment plan.  [Dkt. 5-7 at 182.]  At the following appointment, on November 20, 2021, Claimant's psychiatrist noted that she was "very emotional and overcharged." *Id.* at 180.  The psychiatrist increased the dosage of one of her medications.  At the following visit, on December 22, 2021, Claimant reported that her current medications had been "helpful," but that she was experiencing a lack of focus and forgetfulness.  *Id.* at 178.  Thus, the ALJ's reliance on the state agency psychologists' opinions, which did not have the benefit of these later records, is problematic.  This, too, should be corrected on remand.

### C. Claimant's Remaining Arguments

Claimant makes several additional arguments, none of which require extensive discussion.

First, Claimant argues that the ALJ's RFC determination is not supported by substantial evidence.  This argument flows from the errors identified and discussed above.  Because the ALJ is required to reevaluate his subjective symptom evaluation and consideration of the medical opinions of record on remand, the ALJ will necessarily also have to reconsider his RFC determination.[5]  In doing so, the ALJ shall take care to articulate how the RFC accounts for each of Claimant's limitations, including those caused by her mental impairments.

Claimant also argues that the ALJ failed to adequately address the effects of Claimant's severe obesity on her RFC.  The only mention of obesity in the ALJ's decision is the following:

---

[5] To the extent that Claimant argues that remand is required because the ALJ did not set forth a function-by-function analysis in his decision, that argument fails because Claimant does not identify any particular function that the ALJ did not address.  *See Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) ("The lack of an explicit finding does not necessarily prevent us from concluding that the ALJ appropriately considered a function."); *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("It is not this court's responsibility to research and construct the parties' arguments.").

> The undersigned has also considered the impact of the claimant's obesity on their ability to function as required by SSR 19-2p. The evidence fails to show that the claimant's obesity increases the severity of their other medically determinable severe impairments to an extent that the combination of impairments meets the requirements of a listing.

[Dkt. 5-2 at 31.] The Court agrees that, on remand, the ALJ should consider the effects of Claimant's obesity on her RFC and articulate his actual findings with regard to that issue.

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED for further proceedings consistent with this Report and Recommendation**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  20 JUN 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.